IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRMA F., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:17-CV-2585-N-BK |
| | § | |
| NANCY BERRYHILL, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
|     DEFENDANT. | § | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, the Court now considers the parties' cross-motions for summary judgment. Doc. 18; Doc. 19. For the reasons detailed herein, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

    **A.**    **Procedural History**[1]

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for supplemental security income and disability insurance benefits under the Social Security Act ("the Act"). Plaintiff filed for benefits in September 2014, claiming that she became disabled in March 2014 due to "[l]ate effects" of cerebrovascular disease and diabetes mellitus. Doc. 11-1 at

---

[1] The Court reminds Plaintiff's counsel, pursuant to the directive in the Court's *Scheduling Order*, to reference the Court's "Document" number and page number at the top of each page of the administrative record (<u>not</u> the page ID number) when citing the record.

245; Doc. 11-1 at 569; Doc. 11-1 at 660, 664. Plaintiff's application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 11-1 at 7; Doc. 11-1 at 242-259; Doc. 11-1 at 606.

      **B.**      **Factual Background**

Plaintiff was 45 years old on her alleged onset date, has a high school equivalency degree and past relevant work as a child monitor, home health aide, housekeeper, warehouse worker, and order clerk. Doc. 11-1 at 545; Doc. 11-1 at 569; Doc. 11-2 at 7. Because Plaintiff only challenges the Commissioner's findings regarding her mental health, only those related portions of the record are addressed herein.

In September 2015, Plaintiff presented to the Child & Family Guidance Center (the "Center") for an initial psychiatric evaluation, complaining of anger, depression, and insomnia. Doc. 11-2 at 382. She also reported seeing objects and shadows and experiencing decreased appetite, energy, and memory/concentration. Doc. 11-2 at 382. She reported that she was not taking any prescription medications, and had never done so, and was attempting to obtain disability benefits after not working during the previous two years. Doc. 11-2 at 382. Plaintiff informed the examiner that she had been charged with possession and distribution of a controlled substance and had just completed two ten-year probation sentences. Doc. 11-2 at 383.

The examiner found that Plaintiff demonstrated: (1) a mad, irritable, and labile affect; (2) tangential thought process; (3) paranoid delusions; (4) fair memory and concentration; and (5) fair insight and judgment. Doc. 11-2 at 384-85. The attending physician diagnosed Plaintiff with schizoaffective disorder, bipolar type and prescribed her Latuda, a drug for schizophrenia, depression, and bipolar disorder. Doc. 11-2 at 381, 385; https://www.webmd.com/drugs/2/drug-155134/latuda-oral/details (last visited Oct. 30, 2018).

The following month, Plaintiff reported a decrease in hearing voices and seeing shadows, but that she slept too much and still felt angry. Doc. 11-2 at 381. The doctor adjusted the dosage of her medication to minimize the side effects. Doc. 11-2 at 381. In November 2015, Plaintiff began seeing Nurse Practitioner Dianne Mbai at the Center. Doc. 11-2 at 380. Plaintiff reported she was feeling better at the adjusted dosage of Latuda, she felt it was working well, and her depression and anxiety were well controlled. Doc. 11-2 at 380. It was also observed that Plaintiff's appetite was good, her energy level was normal, she was sleeping well, her speech was within normal limits, and she exhibited no signs of psychosis. Doc. 11-2 at 380. In December 2015, Plaintiff reported that her mood remained stable, her appetite was good, and she was sleeping well. Doc. 11-2 at 378. It was noted that she was cooperative, her mood and affect were normal, and her speech was within normal limits. Doc. 11-2 at 378.

By March 2016, Plaintiff continued to report a stable mood, improvement of symptoms of depression, better sleep, and overall improvement, although she felt tired due to new heart medication. Doc. 11-2 at 376. Numerous trips to Parkland Hospital in 2015 and 2016 indicate that Plaintiff consistently had normal psychiatric assessments with full orientation, no depression or anxiety, intact judgment, no sensory deficits, and normal affect. *See, e.g.*, Doc. 11-3 at 262; Doc. 11-3 at 64, 91, 93, 103, 105, 157, 192, 205, 213, 216, 239, 242, 262, 300, 313. As late as August 2016, Plaintiff denied depression and hallucinations and exhibited a normal mood and affect. Doc. 11-1 at 269-70.

In May 2016, Plaintiff's counselor at the Center, Deborah Scriber Mata, LCSP, completed a medical source statement in which she determined that Plaintiff would have: (1) some limitations in her ability to carry out detailed instructions; (2) no significant problems performing simple one- or two-step instructions; and (3) serious difficulty carrying out written or

3

oral instructions involving several concrete variables.[2] Doc. 11-3 at 479. Ms. Mata further opined that Plaintiff could maintain attention and concentration for extended intervals (approximately two hours) and was only slightly limited in her ability to sustain an ordinary routine without special supervision, but had "extreme loss" in her ability to complete a normal work week without interruptions from psychologically based symptoms and to perform at a consistent pace.[3] Doc. 11-3 at 479. Finally, Ms. Mata determined that Plaintiff would have difficulty working with supervisors, coworkers, and usual work situations as well as adapting to changes in a routine work setting. Doc. 11-3 at 480. By way of further explanation, Ms. Mata stated that "Client has difficulty with changes and dealing with public; her mood can fluctuate rapidly. Client can understand basic instructions but her emotional state related to her schizoaffective symptoms can impede her concentration or comprehension if elevated or escalated." Doc. 11-3 at 480. Ms. Mata additionally noted that Plaintiff could manage benefits in her own best interests. Doc. 11-3 at 480.

In June 2016, Nurse Mbai opined that Plaintiff had: (1) no significant limitations in her ability to understand and carry out instructions of any nature, interact appropriately with the general public, ask simple questions; (2) either no significant limitations or only mild limitations in her ability to carry out very short simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual, sustain an ordinary routine without special supervision, accept instructions and respond

---

[2] "Serious difficulty" was defined as interference with work activity ten to 20 percent of the time. Doc. 11-3 at 479.
[3] "Extreme difficulty" was defined as interference with work activity more than 20 percent of the time. Doc. 11-3 at 479.

4

appropriately to criticism from supervisors, get along with coworkers or peers, respond appropriately to changes in a routine work setting, and cope with normal work stressors; and (3) only some loss in her ability to respond to supervisors, coworkers, and usual work situations and adapt to routine work settings. Doc. 11-3 at 513-14. By way of additional explanation, Nurse Mbai noted that "Client reports last worked about 2 1/2 years ago, and that the primary reason why she stopped working was her back problems." Doc. 11-3 at 514.

### C.   The ALJ's Findings

In August 2016, the ALJ found that Plaintiff is not disabled under the Act. Doc. 11-1 at 259. The ALJ determined that Plaintiff had the severe impairments of status post cerebrovascular accident with late effects of cerebrovascular disease; coronary artery disease post-stenting; diabetes mellitus; neuropathy; hyperlipidemia; degenerative disc disease; obesity; left renal cell carcinoma status post left nephrectomy; and schizoaffective disorder, bipolar type. Doc. 11-1 at 247. With respect to her mental health, the ALJ found that Plaintiff was (1) only mildly limited in her activities of daily living, as she acknowledged that she could perform light household work, wash dishes, grocery shop, cook, and do laundry without aid; (2) moderately limited in social functioning, in that she felt she always had to "get the last word in" and became easily irritated with others; and (3) moderately limited with respect to concentration, persistence or pace, in that Plaintiff testified that she had some memory trouble and had to be reminded to finish things. Doc. 11-1 at 252-53.

While the ALJ gave partial weight to Ms. Mata's opinion, he discounted most of her conclusions, because she had only treated Plaintiff for a short time and her conclusions conflicted with the medical evidence which indicated that Plaintiff's mood, affect, anxiety, and behavior improved after she started taking Latuda. Doc. 11-1 at 255. The ALJ also gave little

5

weight to Nurse Mbai's findings because they were inconsistent with Plaintiff's relatively normal mental status examinations during the treatment period. Doc. 11-1 at 255.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with certain postural limitations and that she could (1) understand, remember, and carry out detailed but not complex instructions; (2) make decisions; (3) attend and concentrate for extended periods; (4) interact with others; and (5) respond appropriately to changes in a routine work setting. Doc. 11-1 at 253-54. Based on vocational expert ("VE") testimony, the ALJ concluded that Plaintiff could return to her past work as an order clerk and was thus not disabled. Doc. 11-1 at 256-57. Alternatively, the ALJ found that Plaintiff could perform other jobs available in the national economy such as order clerk, food and beverage; lens inserter; and call out operator. Doc. 11-1 at 257.

**D.     Post-Opinion Evidence**

After the ALJ's decision issued, Plaintiff submitted additional medical records dated, in relevant part, between September 2013 and August 2016. The records indicate that when Plaintiff's mental health was addressed, she denied depression and hallucinations, was fully oriented, exhibited a normal mood and affect, and had no negative psychological symptoms. *See* Doc. 11-1 at 269-70, 290, 301, 304, 322, 325, 367, 411, 414, 471. Plaintiff had also reported that she could not work because she could not sit for long periods of time without back discomfort. Doc. 11-1 at 300.

**II. APPLICABLE LAW**

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C.

§ 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III.  ARGUMENT AND ANALYSIS

Plaintiff argues that in not including in her RFC Ms. Mata's and Nurse Mbai's limitations regarding her mental health, the ALJ eliminated the only evidence describing the effects of the mental impairments and necessarily had to glean for herself the severity of Plaintiff's mental health issues directly from the medical records.  Doc. 18 at 15-16.  By such action, Plaintiff continues, the ALJ overreached her authority by exercising an expertise she did not possess, in violation of *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995).  Doc. 18 at 16-18.  Additionally, Plaintiff maintains that she was prejudiced by the ALJ's error because the VE's testimony was based on the ALJ's unsupported hypothetical.  Doc. 18 at 18-20.

Defendant responds that the ALJ properly considered all the medical opinion evidence and gave good cause for assigning less weight to the opinions of Ms. Mata and Nurse Mbai since nurse practitioners, licensed clinical social workers, and therapists are not acceptable medical

sources under the regulations. Doc. 19 at 7-8, 13-14. In any event, Defendant urges that the ALJ did accord partial weight to Ms. Mata's opinion, and that the RFC accommodated that opinion insofar as the ALJ found that Plaintiff could understand, remember, and carry out detailed but not complex instructions. Doc. 19 at 10-11. Defendant argues, however, that the ALJ permissibly found that the record did not support Ms. Mata's other limitations, noting that Mata had only treated Plaintiff for a short time, and that her extreme findings were not consistent with treatment notes indicating Plaintiff's psychological symptoms abated when she began taking Latuda. Doc. 19 at 12, 14. Similarly, with respect to Nurse Mbai, Defendant asserts that the ALJ permissibly found her opinion about the severity of Plaintiff's limitations to be inconsistent with the treatment records. Doc. 19 at 12. Defendant also takes issue with the format of Nurse Mbai's opinion which consisted of "[c]heckbox" answers. Doc. 19 at 15.

    The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

    In *Ripley*, the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. However, the *Ripley* panel explained that, although the ALJ

9

should request a medical source statement describing the types of work that the applicant is still capable of performing, "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. The panel also held that reversal based on an ALJ's failure to fully and fairly develop the record is only appropriate "if the applicant shows that he was prejudiced." *Id.* "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Id.* at 557 n.22 (citation omitted). Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

Assuming, *arguendo*, that Plaintiff has sufficiently demonstrated that the ALJ committed *Ripley* error, she has not established that she sustained prejudice. Specifically, Plaintiff has not pointed to any additional evidence that she could have adduced that would possibly change the outcome of her case. Further, a review of the medical evidence discussed above reflects that Plaintiff's mental health impairments were of relatively short duration—approximately two months in the fall of 2015—and resolved quickly with the Latuda prescription. Plaintiff repeatedly reported feeling well and exhibited normal behavior, mood, and affect. Her extensive hospital records consistently reflect that she displayed no negative psychological symptoms nor did she complain of any. In fact, Plaintiff's hospital records indicate that she denied depression and hallucinations and exhibited a normal mood and affect. Indeed, immediately before the ALJ issued her opinion, Plaintiff denied depression and hallucinations and continued to demonstrate a normal mood and affect. Doc. 11-1 at 269-70. Significantly, Plaintiff reported that the reason she could not work was because her back hurt when she sat for long periods of time. Doc. 11-1 at 300. In short, because Plaintiff has not demonstrated prejudice from any presumed *Ripley*

error, the Commissioner's decision should be upheld. See *Brock*, 84 F.3d at 729-29 (holding that claimant had not demonstrated prejudice because he did not point to any evidence that, had the ALJ further developed the record, would have been adduced and could have changed the outcome).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 18, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 19, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on November 20, 2018.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**11**